The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

William James TURNER, Defendant-Appellant.

No. 84CA0736.

Colorado Court of Appeals, Div. I.

July 31, 1986.

Rehearing Denied Sept. 11, 1986.

Certiorari Denied (Turner) Dec. 2, 1986.

7. *See supra* note 3.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, William James Turner, appeals from the judgments entered upon jury verdicts finding him guilty of second degree kidnapping and first degree sexual assault. He contends that the trial court erred in instructing the jury, in admitting irrelevant and highly prejudical testimony, and in imposing separate sentences for second degree kidnapping and first degree sexual assault. We affirm the judgments of conviction but remand the cause for correction of a clerical error in the judgment of conviction, sentence, and mittimus.

On March 10, 1983, the victim, age 5, was walking home from her school bus stop when she was accosted and forced to accompany a man to his apartment. Once there, she was sexually assaulted.

After the attack, the victim ran home and told her grandmother that "the man behind Nettie's house had raped" her. The

child was dishevelled, crying, and bleeding. Her grandmother immediately called the police, who responded promptly.

As she was being taken to the hospital for treatment, the victim directed the police officer to a duplex, which the victim identified as the location of the assault. The duplex was directly behind the house of the grandmother's cousin, Nettie.

At the hospital, a police detective interviewed the victim and the victim described in detail the assault, the interior of the residence where the assault occurred, and the "bad man." She also told the detective that her panties had been left in the house where the assault had occurred. A photo array was immediately prepared, and the victim selected defendant's picture as that of her assailant. The detective then applied for a search warrant for the location of the sexual assault.

In the meantime, two detectives went to the location of the sexual assault to investigate. They were dressed in plain clothes and had no weapons visible. One of the detectives knocked on the door, and defendant opened it. The detective then said, "Police officer," and defendant immediately slammed the door shut. The officers secured the premises, detaining defendant and three men who attempted to leave the house.

Thereafter, the investigating detective arrived with the search warrant. Once inside, she noted that the interior of the house matched the victim's description. On the floor was one yellow barrette, which matched the barrette still in the victim's hair. The victim's panties were tangled up in defendant's bed sheets.

Three months later, during a physical line-up, the victim again identified defendant as her assailant. She also identified him at trial.

At trial, defendant's theories of defense were alibi and misidentification. Although defendant did not testify, his attorney challenged the accuracy of the victim's identification, and presented alibi evidence on defendant's behalf from two neighbors. The prosecution then presented evidence which impeached the alibi witnesses' testimony, including their statements to investigating officers the day after the sexual assault, and evidence that one witness had been convicted of murder and theft.

### I.

#### A.

■ Defendant asserts that the trial court erred in allowing the detective to testify, over defendant's objection, that defendant had slammed the door in his face. Arguing that this situation is analogous to prosecutorial comments upon a defendant's right to remain silent, as discussed in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), he urges us to adopt the rationale that testimony concerning defendant's withholding of consent to a warrantless search should not have been admitted. We reject this contention.

There is no evidence that the detective made a request to search the premises before the door was slammed in his face. Defendant's argument, which implies that the detective's act of knocking on the door constituted a request to search, is, at best, farfetched. Consequently, we reject defendant's assertion that his Fourth Amendment rights were violated.

#### B.

■ Defendant additionally contends that the detective's testimony concerning this door-slamming incident was so prejudicial, and lacked such probative value, as to be inadmissible pursuant to CRE 403. We do not agree.

The evidence concerning this incident had probative value. It was an integral part of the chain of events directly leading to the apprehension of defendant and, thus, was relevant and admissible as part of the "history of the arrest." *People v. Watson*, 650 P.2d 1340 (Colo.App.1982); *see also Davis v. People*, 137 Colo. 113, 321 P.2d 1103 (1958).

As well, this evidence was relevant to the issue of identity. The defenses of misiden-

tification and alibi were based on the presence of three other men in the house at the time of defendant's arrest. Defense counsel cross-examined the detectives extensively concerning their descriptions of these men, stating that these variations in descriptions would form the basis of an argument to the jury that one of the other men was the culprit. The record shows that one of the other men, in particular, was abrasive in his conversation with the detectives, and defense counsel argued that the jury should suspect that this person was the perpetrator.

Based on these assertions, the trial court determined that the jury should be allowed to hear all the details of the detectives' encounters with all of the men at this house. We agree with the ruling of the trial court.

We also reject defendant's contention that this evidence was improperly admitted as unduly prejudicial pursuant to CRE 403.

The determination whether proffered evidence is relevant is within the sound discretion of the trial court, and, if the evidence has probative value in determining the central issue in dispute, a trial court's decision on relevancy will not be reversed unless an abuse of that discretion is shown. *People v. Lowe*, 660 P.2d 1261 (Colo.1983). In determining whether relevant evidence is unduly prejudicial, the trial court must employ a balancing test, but the determination itself remains a matter within the trial court's discretion. *People v. Abbott*, 638 P.2d 781 (Colo.1981).

The evidence, as discussed previously, did not violate any Fourth Amendment right of defendant. Additionally, it bore a logical relation to the contested issues at trial. Thus, we conclude that the trial court's admission of this evidence was proper.

## II.

■ Defendant next contends that the trial court erred in giving a jury instruction which, he contends, mandated the return of a guilty verdict. We reject this contention.

The instruction in question read:

"The evidence presented in this case has raised the affirmative defense of the defendant's whereabouts at the time of the crime. The prosecution, therefore, has the burden of proving to your satisfaction beyond a reasonable doubt the guilt of the defendant as to that issue as well as to all of the elements of the crime charged. If, after consideration of the evidence concerning the affirmative defense, along with all the other evidence, you are not convinced beyond a reasonable doubt of the guilty [sic] of the defendant then *you must return a verdict of ( ) guilty.*" (emphasis added)

Defendant did not challenge the giving of this instruction at trial, and he concedes that where no timely objection is made, only error so substantial as to constitute plain error requires reversal. *See People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972). A claim of plain error relative to a jury instruction must be tested by examining the sufficiency of the instructions as a whole. *Chambers v. People*, 682 P.2d 1173 (Colo.1984); *People v. Green*, 658 P.2d 281 (Colo.App.1982). Reading the instructions as a whole, we are convinced that the jury was adequately apprised of the law, notwithstanding the defective language in the instruction at issue. *Chambers v. People, supra.*

In reviewing claims based on clerical errors in instructions, our supreme court has consistently adhered to the principle that it must be assumed that the jury took a common sense view of the instruction. *Ryan v. People*, 50 Colo. 99, 114 P. 306, (1911). Indeed, as the supreme court commented in *Rhodus v. People*, 160 Colo. 407, 418 P.2d 42 (1966): "The error is an omission which is plain to anyone reading the instruction and does not vitiate the [proper] effect of the instruction."

Accordingly, we conclude that the defendant was not prejudiced, and the error here was harmless beyond a reasonable

doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### III.

■ Last, defendant argues that the trial court erred in entering separate judgments of conviction and sentences for first degree sexual assault and for second degree kidnapping arising from the same incident. As the premise for this conclusion, he contends that sexual assault is an element of second degree kidnapping. This issue was resolved adversely to defendant's argument in *People v. Powell*, 716 P.2d 1096 (Colo.1986).

### IV.

■ The Attorney General has called to our attention a clerical error in the judgment of conviction, sentence, and mittimus. The record shows that the trial court imposed a sentence of 24 years for kidnapping and 8 years for sexual assault, to be served concurrently. However, the minute order and mittimus show that the sentence was 24 years for sexual assault and 8 years for kidnapping. Consequently, the cause is remanded for correction of the clerical error. Crim.P. 36.

The judgment is affirmed and the cause is remanded for correction of the judgment, mittimus, and sentence.

PIERCE and VAN CISE, JJ., concur.