**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Charles M. KRUTSINGER, Defendant–Appellant.**

**No. 04CA0286.**

Colorado Court of Appeals, Div. II.

Aug. 11, 2005.

John W. Suthers, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Craig L. Truman, P.C., Craig L. Truman, Denver, Colorado; Burke & Neuwirth, P.C., Dean Neuwirth, Denver, Colorado, for Defendant–Appellant.

TAUBMAN, J.

Defendant, Charles M. Krutsinger, appeals the judgment of conviction entered on a jury verdict finding him guilty of ten counts each of sexual assault on a child, sexual assault on a child by one in a position of trust, and aggravated incest. We remand for further proceedings and correction of the mittimus.

## I. Background

Defendant and the victim's mother were married in 1992 when the victim was approximately six years old. In 1993, shortly before the victim started the second grade, defendant, her mother, and the victim moved from Houston to Denver.

In August 2002, the victim informed her mother that she had been sexually abused, but she did not say by whom. At the end of October 2002, the victim had the first of four counseling sessions with Dr. Patricia Howard, a psychologist. During that session, the victim told Howard that defendant might have molested her when she was younger. In early November, the victim told her high school guidance counselor that defendant had sexually molested her. The counselor informed the police and the mother about the victim's allegation.

Defendant was subsequently charged with ten counts each of sexual assault on a child, sexual assault on a child by one in a position of trust, and aggravated incest.

At trial, the victim testified about defendant's alleged abuse and her counseling sessions with Howard. The victim's mother, her school counselor, a school resource officer, and a sheriff's department investigator testified and corroborated the victim's allegations of sexual abuse. The jury was also shown a videotape of an interview with the victim regarding the abuse, which was conducted by

a forensic interviewer from a child advocacy center.

After the prosecution presented its case, defendant sought to admit Howard as a witness and made an offer of proof regarding Howard's proposed testimony. The trial court denied defendant's request on the ground that the victim had neither consented to the admission of Howard's testimony nor waived her psychologist-patient privilege. Defendant testified on his own behalf and denied the victim's allegations.

The jury convicted defendant on all counts, and he was sentenced to ten years in DOC.

## II. Exclusion of Howard's Testimony

Defendant contends, the prosecution concedes, and we agree that the trial court erred in excluding Howard's testimony.

■ Although the trial court based its exclusion on its finding that the victim did not waive her psychologist-patient privilege, the victim testified in detail regarding statements she made to Howard during the counseling sessions. Thus, we agree with both parties that she waived her psychologist-patient privilege. *See People v. Sisneros,* 55 P.3d 797 (Colo.2002)(patient may expressly or impliedly waive this privilege by testifying as to the substance of the treatment sessions).

## III. Appropriate Standard for Review of Error

We must now decide on the appropriate standard for determining whether the trial court's error warrants reversal of defendant's conviction. At our request, the parties have filed supplemental briefs on this issue.

■ The parties agree that, if the error is of constitutional dimension, the "constitutional harmless error" standard applies. Under this standard, the People would have the burden of showing beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Griego v. People,* 19 P.3d 1, 8–9 (Colo.2001).

■ Similarly, the parties agree that, if the error is not of constitutional dimension,

the review is conducted under the ordinary harmless error standard. *See* CRE 103(a)("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."); Crim. P. 52(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."); C.A.R. 35(e) ("The appellate court shall disregard any error or defect not affecting the substantial rights of the parties."). Under this standard, reversal is not required if the reviewing court can say with fair assurance that, in light of the entire record, the error did not substantially influence the verdict or impair the fairness of the trial. *People v. Stewart,* 55 P.3d 107, 124 (Colo.2002) (citing *People v. Gaffney,* 769 P.2d 1081 (Colo.1989) ).

The parties disagree, however, whether the trial court's error was of constitutional dimension.

Defendant contends that the error was of constitutional dimension because the ruling deprived him of the right to present witnesses, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

The People argue that a defendant cannot premise a claim of constitutional error upon the mere fact that the trial court disallowed the testimony of a witness. They contend that the erroneous exclusion of testimony is of constitutional dimension only if the defendant shows that the excluded testimony was "favorable and material." They further contend that, because defendant has failed to make the necessary showing, the trial court's error should be reviewed simply for ordinary harmless error.

■ We agree with the analytical framework advanced by the People and agree that, under this framework, defendant has yet to establish that the trial court's error was of constitutional dimension. However, we further conclude that the case should be remanded so that the trial court can (1) allow Howard to testify regarding the conversations she had with the victim during the counseling sessions, (2) determine, in light of this evidence, whether the exclusion of How-

ard's testimony was an error of constitutional dimension, and (3) if the error was not of constitutional dimension, determine whether the error was harmless under the ordinary harmless error standard.

### A. Standard for Materiality

■ A defendant's right to due process and compulsory process includes the right to present witnesses in his or her own defense. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

However, this right is not unlimited. In presenting such testimony, the defendant must comply with certain evidentiary and procedural rules which "assure both fairness and reliability in the ascertainment of guilt and innocence." *Richmond v. Embry,* 122 F.3d 866, 872 (10th Cir.1997)(quoting *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973)). "However, the state may not arbitrarily deny a defendant the ability to present testimony that is 'relevant and material, and . . . vital to the defense.' " *Richmond, supra,* 122 F.3d at 872 (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)).

■ In *Richmond,* the Tenth Circuit concluded that a defendant must satisfy two criteria to show that he or she was unconstitutionally denied the right to present relevant evidence: (1) the importance of the evidence to the defense outweighed the interests of the state in excluding the evidence, and (2) the defendant was denied fundamental fairness, such that the act complained of necessarily prevented the defendant from having a fair trial.

Here, we have already concluded that the trial court erroneously excluded defendant's proffered evidence, and therefore, we need not consider the first criterion set forth in *Richmond.*

■ Under the second criterion, "It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial." *Richmond, supra,* 122 F.3d at 872 (quoting *Maes v. Thomas,* 46 F.3d 979, 987 (10th Cir.1995)). In this con-

text, "materiality" does not mean that the evidence relates to a fact of consequence. *See, e.g., People v. Rath,* 44 P.3d 1033, n. 3 1038 (Colo.2002) (concept of materiality no longer has independent significance under the rules of evidence and is instead subsumed within the notion of logical relevance). Rather, "materiality," as used in this context, means that the evidence would have affected the outcome of the trial. In other words, evidence is material if it would have created a reasonable doubt that did not exist without that evidence. *Richmond, supra,* 122 F.3d at 872; *see also Valenzuela–Bernal, supra,* 458 U.S. at 868, 102 S.Ct. at 3447 (implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial) (quoting *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976)).

In *People v. Melendez,* 102 P.3d 315 (Colo. 2004), the Colorado Supreme Court applied this standard and cited *Valenzuela–Bernal* and *Richmond* with approval. In *Melendez,* the trial court precluded the testimony of a defense witness because the witness had violated a sequestration order. In considering whether the trial court's exclusion of that evidence was reversible error, the supreme court stated:

> While fundamental, the right to present defense evidence is not absolute. *A defendant must "make some plausible showing of how [the] testimony would have been both material and favorable to his defense."* The evidence may be excluded if it is unnecessarily duplicative.
>
> Nevertheless, cumulative evidence that may corroborate the defendant's own statement should ordinarily be admitted. (Emphasis added.)

*Melendez, supra,* 102 P.3d at 320 (citations omitted; quoting *Valenzuela–Bernal, supra,* 458 U.S. at 867, 102 S.Ct. at 3446; alteration in original).

### B. Materiality of Howard's Testimony

Normally, a defendant may argue the materiality of excluded evidence by making an offer of proof to the trial court. CRE 103(a)(2). *See also Valenzuela–Bernal, su-*

pra, 458 U.S. at 874, 102 S.Ct. at 3450 ("courts should afford some leeway for the fact that the defendant necessarily proffers a description of the material evidence rather than the evidence itself").

Here, however, defendant was unable to make an offer of proof as to the materiality of Howard's testimony. Defendant could not interview Howard before trial because the substance of Howard's counseling sessions was protected by the psychologist-patient privilege. Further, any subsequent attempt to interview Howard was effectively precluded by the trial court's erroneous ruling on the question of waiver.

Accordingly, we must remand the case for further proceedings at which time Howard shall testify, and the trial court shall determine whether her testimony would have been material and favorable to defendant's case. After hearing Howard's testimony, the trial court must determine whether the evidence, had it been admitted at trial, would have affected the outcome of the case.

■ This determination necessarily requires an evaluation of the entire record:

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. ... This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

Valenzuela–Bernal, 458 U.S. at 868, 102 S.Ct. at 3447 (quoting United States v. Agurs, supra, 427 U.S. at 112–13, 96 S.Ct. at 2401–02).

### C. Determination of Harmlessness

If the trial court determines that the improperly excluded evidence would have affected the outcome of the case, it must order a new trial. This is so because the defendant's showing that the excluded evidence was favorable and material would necessarily defeat any attempt by the People to show that the constitutional error was harmless beyond a reasonable doubt. See Bernal v. People, 44 P.3d 184 (Colo.2002)(ultimate burden if proof is on People to show that a constitutional error was harmless beyond a reasonable doubt). This is true for other constitutional errors that deprive the defense of favorable evidence. See In re Sassounian, 9 Cal.4th 535, 545 n. 7, 37 Cal.Rptr.2d 446, 887 P.2d 527, 533 (1995) (if the defendant shows that the prosecution failed to disclose evidence that was both favorable and material, he necessarily establishes that the error was not harmless beyond a reasonable doubt).

■ Conversely, if the trial court determines that the error was not of constitutional dimension because the excluded evidence was not material and favorable, it should then determine whether the error was harmless under the ordinary harmless error standard discussed above. As a practical matter, the review for harmlessness may be decided by reference to the findings and conclusions that informed the court's decision on the issue of materiality. Nevertheless, because the two legal standards are not necessarily coextensive, the trial court should determine whether its erroneous ruling affected defendant's substantial rights. See CRE 103(a); Crim. P. 52(a); C.A.R. 35(e); People v. Stewart, supra, 55 P.3d at 124.

### III.  Prosecutorial Misconduct

Defendant contends that reversal is required because the prosecution made improper comments during its closing argument. We disagree.

■ Defendant did not object to the prosecutor's statements he now challenges on appeal, and therefore, we review the statements under a plain error standard. See Wilson v. People, 743 P.2d 415 (Colo.1987). Plain error is error that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. People v. Salyer, 80 P.3d 831 (Colo.App.2003); People v. Petschow, 119 P.3d 495, 2004 WL 2136945 (Colo.

App. No. 01CA1684, Sept. 23, 2004)(plain error is obvious, substantial, and grave.)

■■■■ Prosecutorial misconduct in closing arguments rises to the level of plain error only if it is "flagrantly, glaringly, or tremendously improper." *People v. Avila*, 944 P.2d 673, 676 (Colo.App.1997)(quoting *People v. Vialpando*, 804 P.2d 219, 224 (Colo.App. 1990)). Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. *See People v. Raehal*, 971 P.2d 256 (Colo.App.1998). The prosecution is afforded considerable latitude in replying to opposing counsel's arguments. *Vialpando, supra.* Moreover, a defendant's failure to object suggests, that at least at the time the comment was made, "the live argument was not overly damaging." *Avila, supra*, 944 P.2d at 676.

Defendant contends that in the closing argument, the prosecution improperly appealed to the sympathies of the jury, denigrated defendant's theory of defense, and bolstered the victim's credibility. We disagree.

In defendant's closing argument, defense counsel repeatedly attacked the victim's credibility, suggesting that the victim lied in much of her testimony. At the end of defendant's closing argument, defense counsel stated:

In the end, this case is about who[m] do you believe, for one person must be lying and one person must be telling the truth.... We're looking for you to see this case on the evidence. Hear the sympathetic appeal when [the prosecution] says, [t]his poor little kid. No wonder she's got it wrong. It's traumatizing. This poor little kid. No wonder she can't keep it straight, because it happened so many times. This poor little kid. Hear the sympathetic appeal. It will be coming here in a minute.

Immediately following those statements, the prosecutor, in his rebuttal closing, stated:

She's inconsistent. You can't believe her. All of those inconsistencies. My God, how can anybody believe that? You know what the great thing about that defense is? It works in every child sex assault case, every single one where there [are] repeat allegations of molestation, because they are always inconsistent.

Shortly thereafter, the prosecutor continued, stating:

If this girl is lying to you, think about what a lie this is. This isn't just some cute little lie. Either this girl has told you the truth, opened her heart up to you and told you what happened to her when she was a little girl, or this is the most diabolical, despicable plot from the pit of hell to accuse a man of something like this if he didn't do it. She knows the consequences of that. Is she really that girl? Is she that evil girl?

■■■ In reading the arguments as a whole, we conclude that the prosecutor's comments responded to defense counsel's attacks on the victim's credibility and, therefore, did not denigrate defendant's theory of defense. *See Vialpando, supra.*

■■■ Furthermore, where the case turns on which witness the jury believes, each side is entitled to argue that its witnesses testified truthfully while the witnesses for the opposing side testified falsely. *People v. Salter*, 717 P.2d 976 (Colo.App.1985). Therefore, the prosecutor did not improperly bolster the victim's credibility.

■■■ Defendant next contends that the prosecutor's comment regarding the "pit of hell" and use of the word "diabolical" forced religious jurors to contemplate whether they themselves would damn the victim to hell if they did not render a verdict which validated her accusations. Defendant contends this ostensible use of religion improperly appealed to the sympathies of the jury.

Defendant cites § 13–90–110, C.R.S.2004, and CRE 610 to establish that religious beliefs are inadmissible at trial. However, both the statute and the rule refer to the inadmissibility of references to or evidence of a witness's religious beliefs. The prosecutor is not a witness, and his or her statements made in closing argument are not evidence. *See People v. Duncan*, 109 P.3d 1044 (Colo. App.2004).

The prosecutor argues that his use of the phrase "pit of hell" was a reasonable re-

sponse to defense counsel's closing argument. Even if we were to assume this response was not reasonable, we conclude that defendant's religion-based argument is too tenuous to warrant reversal. The terms "pit of hell" and "diabolical" appear to have been rhetorical flourishes, rather than an invocation of the victim's religious beliefs. Therefore, we are not persuaded that it was so flagrantly, glaringly, or tremendously improper as to warrant reversal under a plain error standard. *See Vialpando, supra; see also People v. Harris*, 914 P.2d 425 (Colo.App.1995)(prosecutor's flamboyant demonstrative use of knife that was an exhibit at trial was a response to defendant's arguments and not so inflammatory as to warrant reversal); *Lee v. State*, 148 So. 627, 627 (Miss.1933)(prosecutor's comment, "It would be better for this County if God would send an earthquake and swallow up Pistol Ridge and send it to the bottom pits of Hell," did not warrant reversal because it did not influence the jury).

Last, defendant contends that the prosecutor erred by calling him a liar. In a pretrial hearing, the school counselor testified that defendant had talked to him in October 2002 because defendant was concerned about the victim. At trial, defendant testified regarding this conversation, but when the counselor testified, he was not asked whether he and defendant had discussed the victim's well-being.

In his closing argument, the prosecutor stated in part:

> Is there any evidence [regarding defendant's conversation with the counselor] besides what the defendant said? Did you notice that [the counselor] sat right on that witness stand and no one asked him about whether the defendant came to see him? Think to yourself why this might be.

█ We conclude that this comment was improper because the prosecutor was aware that the counselor had testified to such a conversation with defendant in the pretrial hearing. *See DeLuzio v. People*, 177 Colo. 389, 494 P.2d 589 (1972)(prosecutor may not knowingly misrepresent facts to the jury). However, in the context of the entire argument and in light of the other evidence before the jury, we conclude that it was not so flagrantly, glaringly, or tremendously improper as to warrant reversal.

## IV. Correction of the Mittimus

As noted by defendant in his opening brief, the charging document does not contain a count nineteen. Nevertheless, the jury convicted defendant of count nineteen, and the court entered judgment on that count. The prosecution does not dispute this contention, and therefore, the mittimus should be corrected on remand, if defendant's conviction stands affirmed. *See* Crim. P. 36; *see also People v. Turner*, 730 P.2d 333 (Colo.App.1986)(clerical error in judgment of conviction, sentence, and mittimus is proper grounds for remand to correct the error). We note that the correction does not affect the length of defendant's incarceration period because the sentences on all counts were to be served concurrently.

## V. Remand

We remand for a hearing to obtain Howard's testimony. On remand, if the trial court determines that the testimony was material to defendant's case, the court must further determine whether the error in excluding that evidence was harmless beyond a reasonable doubt. *See Melendez, supra.* If the trial court determines that the evidence was not material and favorable to defendant's case, then the trial court must determine whether the error in excluding that evidence was harmless error, such that it affected the substantial rights of the defendant. *See King v. People*, 785 P.2d 596 (Colo.1990).

If the trial court determines that the exclusion of the evidence was reversible error, defendant's conviction stands reversed, subject to direct appeal by the People pursuant to § 16–12–102(1), C.R.S.2004. If the trial court determines that the exclusion of the evidence was not reversible error, defendant's conviction stands affirmed, subject to a direct appeal by defendant, and the court should correct the mittimus.

The case is remanded for further proceedings consistent with this opinion.

Judge ROTHENBERG and Judge RUSSEL concur.